IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| COURTNEY W.,[1] <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Civil No. 23-22865 (RMB) <br><br> **OPINION** |

**RENÉE MARIE BUMB, Chief United States District Judge:**

Plaintiff Courtney W. asks this Court to overturn the Commissioner of Social Security's (Commissioner) denial of her application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act (the Act), 42 U.S.C. §§ 401 *et seq*. Courtney faults the Administrative Law Judge (ALJ) for, among other things, failing to consider limitations caused by her medically determinable impairments when formulating her Residual Functional Capacity (RFC).

For the below reasons, this Court **AFFIRMS** the ALJ's decision finding Courtney not disabled under the Act.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that federal courts should refer to plaintiffs in social security disability cases by only their first names and last initials given the significant privacy concerns in these matters. *See also* D.N.J. Standing Order 2021-10.

## I. LEGAL STANDARDS

### A. Standard of Review

The Act grants federal courts limited power to review the Commissioner's decision to deny an applicant DIB. 42 U.S.C. § 405(g). While courts conduct a plenary review of all legal issues the Commissioner decides, *see Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000), the Act requires courts to uphold the Commissioner's factual decisions if supported by "substantial evidence," *see* 42 U.S.C. § 405(g). *See also Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). This evidentiary threshold is "not high" and "means only . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (internal quotation marks omitted) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The substantial evidence standard is a deferential one, and a court cannot set aside the Commissioner's decision merely because "acting de novo [it] might have reached a different conclusion." *See Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986). Indeed, courts cannot "weigh the evidence or substitute [its own] conclusions for those of the [Commissioner.]" *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (first alteration in original, internal quotation marks and citation omitted).

Still, while deferential, the substantial evidence inquiry is not a perfunctory exercise to rubberstamp the Commissioner's decision. *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) (explaining the substantial evidence standard is not "a talismanic or self-executing formula for adjudication," rather, the standard requires a "qualitative exercise"). Thus, when reviewing the Commissioner's decision, courts must "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K. ex rel. K.S. v.*

*Comm'r of Soc. Sec.*, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018) (internal quotation marks and citation omitted).

Where, as here, the Appeals Council denies a claimant's request for a review of an ALJ's decision, the "ALJ's decision is the Commissioner's final decision." *Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). The ALJ's decision must have enough information to "permit meaningful judicial review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004). This requires the ALJ to explain what evidence the judge considered that "supports the result" and "some indication of the evidence [the judge] rejected." *Smith v. Comm'r of Soc. Sec.*, 178 F. App'x 106, 111 (3d Cir. 2006) (quoting *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981)). Otherwise, courts "cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705. Courts will set aside an ALJ's decision if the judge failed to consider the entire record or resolve an evidentiary conflict. *Fargnoli v. Massanari*, 247 F.3d 34, 41-42 (3d Cir. 2001).

### B. The Social Security Disability Determination

To qualify for DIB, a claimant must show she is disabled. 42 U.S.C. § 423. "Under the [Act,] a disability is established where the claimant demonstrates that there is some medically determinable basis for an impairment that prevents [her] from engaging in any substantial gainful activity for a statutory twelve-month period." *Fargnoli*, 247 F.3d at 38-39 (internal quotation marks and citation omitted). "A claimant is considered unable to engage in any substantial gainful activity 'only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial

gainful work which exists in the national economy." *Id.* at 39 (quoting 42 U.S.C. § 423(d)(2)(A)).

The Commissioner makes a disability determination through a five-step sequential process. 20 C.F.R. § 404.1520(a)(4). For steps one through four, the claimant bears the burden of proof. *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019). At the fifth step, the Commissioner shoulders the burden. *Id.* The five-steps are:

> At step one, the ALJ determines whether the claimant is performing "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If [she] is, [she] is not disabled. *Id.* Otherwise, the ALJ moves on to step two.
>
> At step two, the ALJ considers whether the claimant has any "severe medically determinable physical or mental impairment" that meets certain regulatory requirements. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). A "severe impairment" is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" *Id.* §§ 404.1520(c), 416.920(c). If the claimant lacks such an impairment, [she] is not disabled. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If [she] has such an impairment, the ALJ moves on to step three.
>
> At step three, the ALJ decides "whether the claimant's impairments meet or equal the requirements of an impairment listed in the regulations." [*Smith v. Comm'r of Soc. Sec.*], 631 F.3d [632, 634 (3d Cir. 2010)]. If the claimant's impairments do, [she] is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If they do not, the ALJ moves on to step four.
>
> At step four, the ALJ assesses the claimant's "residual functional capacity" (RFC) and whether [she] can perform [her] "past relevant work." *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). A claimant's "[RFC] is the most [she] can still do despite [her] limitations." *Id.* §§ 404.1545(a)(1), 416.945(a)(1). If the claimant can perform [her] past relevant work despite [her] limitations, [she] is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If [she] cannot, the ALJ moves on to step five.
>
> At step five, the ALJ examines whether the claimant "can make an adjustment to other work[,]" considering [her] "[RFC,] . . . age, education, and work experience." *Id.* §§ 404.1520(a)(4)(v),

> 416.920(a)(4)(v). That examination typically involves "one or more hypothetical questions posed by the ALJ to [a] vocational expert." *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984). If the claimant can make an adjustment to other work, [she] is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If [she] cannot, [she] is disabled.

*Hess*, 931 F.3d at 201–02 (some alterations omitted).

## II. BACKGROUND

### A. Courtney's Application for DIB, the Commissioner's Decision, and the Administrative Hearing

Courtney applied for DIB under the Act claiming a disability onset date of April 25, 2019. [Administrative Record (AR) 97.)] She claimed several conditions disabled her, like fibromyalgia, endometriosis, reflex sympathetic disorder (RSD), bladder problems, and irritable bowel syndrome (IBS). [*Id.*] The Commissioner denied her initial application and her reconsideration request. [AR121-29.] Courtney then requested a hearing before an ALJ to challenge the Commissioner's decisions on her DIB application. [AR130-31.]

At the hearing, Courtney testified about her employment history and her medical conditions. While Donna claimed a disability onset date in April 2019, she explained, and her earning records showed, that she worked either as a phlebotomist or medical aide at various medical facilities after April 2019. [AR50-53.] For example, Courtney worked at LabCorp in 2020 and at a hospital in 2021 "drawing blood" and helping in the lab. [AR50, 52.] Yet her employment was short-lived because her employers let her go because of, among other things, frequent absences and leaving early. [AR50-53.] Courtney explained that she had "mostly" called out of work to make doctors' appointments for her endometriosis, fibromyalgia, and RSD. [AR51.] She worked at the hospital for about a year but left because she "couldn't walk." [AR52-53.]

5

Turning to her medical conditions, Courtney explained her fibromyalgia and RSD "runs through [her] entire body" causing "sharp pressure pain" to a degree that "it's sensitive to touch" parts of her legs and arms. [AR53.] She added those conditions cause her hands to swell and she experiences numbness in her hands and feet. [*Id.*] She explained that her RSD causes "poor circulation." [*Id.*] Because of the numbness in her hands, Courtney struggles to use them and some tasks take her "a little bit longer" because she "can't fully feel the tips of [her] fingers." [AR62.] For treatment, Courtney explained that physical therapy "works really good" for her fibromyalgia. [AR60.] She also tried epidurals and "ketamine infusions" for her RSD. [*Id.*] She has also taken different medications that alleviate some of her pain. [AR61.]

On top of those conditions, Courtney explained that her endometriosis causes her severe pain, which she equates to a "barb wire scratching against [her]." [AR54.] She added the condition causes "a lot of pressure and sharp pain . . . in [her] left pelvic area." [*Id.*] Courtney also complained about "extremely severe menstrual cycles" that have caused her anemia and weakness. [AR55.] She explained that her menstrual cycles cause her such "severe cramps" that she has been "doubled over in pain" causing her to remain in bed all day. [*Id.*]

In addition, Courtney suffers from IBS and bladder leaks. [AR55-56.] For her IBS, Courtney estimated she spends about thirty minutes in the bathroom because of constipation. [AR55.] According to Courtney, the IBS has lasted more than a year. [AR56.] For the bladder leaks, Courtney explained she "constantly" feels like she has to use the restroom but can't. [*Id.*] She added that she experiences "leakage issues." [*Id.*] She estimated that she uses the bathroom about eight times a day, "just constantly being in and out." [*Id.*]

6

Courtney also complained about headaches and migraines. [AR57.] She gets headaches or migraines about four times a week, and sometimes, the pain will not go away. [*Id.*] With the headaches, she sometimes experiences nausea and dizziness. [*Id.*] Courtney explained that her headaches and migraines are associated with her fibromyalgia and RSD. [AR74.] On top of her headaches and migraines, Courtney complained that her medications make her "feel very like weird" and she feels "agitated or awake, just jittery." [AR57.]

B. The ALJ's Decision and the Appeals Council's Decision

The ALJ found Courtney not disabled under the Act. [AR29.] In doing so, the ALJ found Courtney could perform work at a sedentary level with certain limitations. [AR24-25.] While the ALJ found Courtney unable to perform past relevant work given her RFC, the judge concluded that, given Courtney's age, experience, and education, she could make a "successful adjustment to other work that exists in significant numbers in the national economy." [AR28-29.]

Turning to the ALJ's reasoning, the judge deferred at step one of the five-step sequential analysis. [AR19-20.] The ALJ found that Courtney engaged in substantial gainful activity after her alleged disability onset date in April 2019. [*Id.*] Yet the ALJ concluded "there has been continuous 12-month period(s) during which [Courtney] did not engage in substantial gainful activity." [AR20.] That said, the ALJ deferred at step one because the judge ultimately found Courtney not disabled at step five. [*Id.*]

At step two, the ALJ classified Courtney's bilateral lumbar spondylosis, interstitial cystitis (IC), and RSD as severe medically determinable impairments. [*Id.*] Relevant here, the ALJ classified Courtney's endometriosis as non-severe because Courtney's medical records "shows generally normal gynecological exams and non-compliance with

7

medication." [*Id.*] The ALJ also classified Courtney's fibromyalgia as non-severe because she failed to exhibit pain or tenderness in eleven out of the eighteen tender points. [AR21.] The judge also found limited records relating to treatment for Courtney's fibromyalgia. [*Id.*] For her headaches, the ALJ concluded that they are "symptoms of [Courtney's] severe impairments rather than medically determinable impairments." [AR23.] The ALJ found little "corroborating evidence in the record" to support a finding that Courtney's headaches qualify as a medically determinable impairment. [*Id.*]

Onto step three, the ALJ found none of Courtney's impairments met or equaled the severity of impairments listed in the regulations. [AR23.] In doing so, the ALJ considered Listings 1.15 (skeletal spine disorders compromising nerve roots) and 1.16 (lumbar spinal stenosis comprising the cauda equina) but found no evidence of the listing level of severity. [AR23-24.] For example, the ALJ explained that Courtney doesn't require an assistive device for her back impairment, and in fact, her medical records showed Courtney "exhibit[ed] a normal gait and stance and normal coordination without assistance." [AR24.]

For step four, the ALJ found Courtney had the RFC to perform sedentary work with several limitations, including limitations on manipulative movements, like "handl[ing], finger[ing], and feel[ing] with bilateral hands." [AR24-25.] In reaching this RFC, the ALJ found Courtney's medically determinable impairments "could reasonably be expected to cause [her] alleged symptoms[.]" [AR25.] But given the record, the ALJ found Courtney's statements on the "intensity, persistence, and limiting effects of [her] symptoms . . . not entirely consistent with the medical evidence and other evidence in the record[.]" [*Id.*] The ALJ concluded that the medical evidence did not "support [Courtney's] allegations to the degree stated." [AR26.]

8

For her IC, the ALJ noted that while Courtney continued to report the symptoms to her gynecologist, the ALJ found her exams were "generally unremarkable" and a November 2020 gynecological exam was "within normal limits including a cervical examination." [*Id.*] The ALJ noted the medical records from 2021 continued to show that Courtney's "gynecological exams were within normal limits." [*Id.*] While the ALJ found that Courtney would need "ready access to a bathroom[,]" the judge concluded that the record doesn't show that she needs restroom accommodations "outside the normal morning, lunch, and afternoon breaks." [AR27.]

Likewise, for her RSD, the ALJ noted that as early as May 2019, Courtney's physical examinations "reflects normal extremities, normal skin, no edema, and no further evidence of synovitis or tenderness in her hands or wrists except as noted by [Courtney] subjectively." [AR26.] The ALJ noted certain medical records revealed "decreased lumbar range of motion, facet tenderness in the lumbar spine with muscle spasm, decreased sensation in the bilateral feet, and paresthesia in the arms and legs." [*Id.*] Yet Courtney still exhibited "5/5 strength and normal gait." [*Id.*] Courtney's 2021 medical records reveal that she "continues to exhibit full strength in her extremities." [*Id.*] While Courtney told her medical providers she experienced "numbness/paresthesia" in her extremities, the ALJ found "no evidence of electro-diagnostic testing during the relevant" timeframe. [*Id.*]

When formulating Courtney's RFC, the ALJ looked to, among other things, the state-agency consultants' medical opinions. [AR27.] Both doctors found Courtney could perform light work with certain limitations. [*Id.*] While the ALJ found those doctors' opinions "mostly persuasive[,]" the judge did not adopt them because he concluded the

9

"updated evidence at the hearing . . . supports a more restrictive [RFC] including a less than full range of sedentary exertion, as well as manipulative limitations." [*Id.*]

All and all, the ALJ concluded the "objective medical evidence coupled with [Courtney's] only partially consistent complaints support the [RFC]" formulated by the judge. [*Id.*]

With that RFC of sedentary work at hand, the ALJ found that Courtney could not perform her past work as a phlebotomist and a medical assistant. [AR28.] At step five, the ALJ found that, given Courtney's age at her alleged onset disability date (32 years old), education level (high school), and work experience, she could perform other jobs in the national economy. [*Id.*] Pointing to the Vocational Expert's testimony, the ALJ noted Courtney could work as a telephone solicitor, appointment clerk, or receptionist given her RFC. [AR29.] Taking Courtney's age, education, and work experience, the ALJ ruled she could successfully adjust to other work in the national economy. [*Id.*] Accordingly, the ALJ found Courtney not disabled. [*Id.*]

The Appeals Council denied Courtney's request for review. [AR1-AR6.]

## III.  DISCUSSION

Courtney's challenges to the ALJ's decision are two-fold. First, the ALJ erred at step two by misclassifying her endometriosis and fibromyalgia as non-severe and failing to classify her headaches as a medically determinable impairment. [Pl.'s Br. at 19-24 (Docket No. 7).] Compounding those errors, the ALJ never considered any limitations associated with those conditions when formulating her RFC. [*Id.*] Second, the ALJ failed to consider the limitations caused by her severe medically determinable impairments of IC and RSD when crafting the RFC. [*Id.* at 12-19.] Courtney faults the ALJ for not explaining how the

RFC will accommodate the limitations caused by those impairments. [*Id.*] She argues the ALJ failed to properly credit her testimony and ignored objective medical evidence that supported her testimony. [*Id.* at 15-16.]

Before turning to the merits of Courtney's challenges, the Court addresses the common theme that runs through them: the ALJ did not give serious credit to her subjective complaints of pain and limitations when crafting the RFC. [*Id.* at 16-24.] Unquestionably, ALJs "must give serious consideration to a claimant's subjective assertions of pain[.]" *Welch v. Heckler*, 808 F.2d 264, 270 (3d Cir. 1986). But ALJs are "not required to credit them." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 363 (3d Cir. 2011) (citing 20 C.F.R. § 404.1529(a)). A claimant's statements about "pain or other symptoms will not alone establish" that the claimant is "disabled." 20 C.F.R.§ 404.1529(a). When evaluating the intensity and persistency of symptoms, ALJs must look to "all of the available evidence," like the claimant's medical history, medical signs and laboratory findings, and statements on "how [the] symptoms affect" the claimant. *Id.* ALJs must "then determine the extent to which [the claimant's] alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence to decide how [the claimant's] symptoms affect [his or her] ability to work." *Id.*

A claimant's RFC is the most she can do despite her limitations. *Id.* § 404.1545(a)(1). In formulating an RFC, the ALJ need only include "credibly established" limitations. *Rutherford*, 399 F.3d at 554; *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (explaining the ALJ has discretion to choose whether to include "a limitation [that] is supported by medical evidence, but is opposed by other evidence in the record" but "[t]his

11

discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible"). ALJs are free to reject a claimant's subjective complaints of pain and limitations when they are inconsistent with the medical evidence. *See Burns v. Barnhart*, 312 F.3d 113, 129-30 (3d Cir. 2002).

The ALJ here found that Courtney's impairments can be reasonably expected to cause her symptomology, but the judge ultimately found her testimony on the "intensity, persistence, and limiting effects of" those symptoms not entirely credible given the record. [AR25.] Indeed, the ALJ found the medical evidence didn't support "her allegations to the degree stated." [AR26.] Courts will "ordinarily defer to an ALJ's credibility determination because he or she has the opportunity at a hearing to assess a witness's demeanor." *Reefer v. Barnhart*, 326 F.3d 376, 380 (3d Cir. 2003). "The substantial evidence standard entitles an ALJ to considerable deference, especially in credibility findings." *Volage v. Astrue*, 2012 WL 4742373, at *7 (D.N.J. Oct. 1, 2012).

With that framework at hand, the Court turns to Courtney's challenges mindful that they largely implicate the ALJ's credibility determinations.

### A. The ALJ's Step Two Findings on Non-Severe Impairments

Courtney argues the ALJ erred at step two by misclassing her endometriosis and fibromyalgia as non-severe. [Pl.'s Br. at 21-24.] She also faults the ALJ for not classifying her headaches as a medically determinable impairment. [*Id.* at 20-21.]

For starters, the ALJ's alleged misclassification of Courtney's endometriosis and fibromyalgia as non-severe impairments is not a basis for remand because the ALJ found

12

other severe impairments at step two. *Orr v. Comm'r Soc. Sec.*, 805 F. App'x 85, 88 (3d Cir. 2020); *see also Auriemma v. Colvin*, 2015 WL 5097902, at *6 (D.N.J. Aug. 31, 2015) ("So long as the ALJ rules in Plaintiff's favor by finding that any single impairment meets the severity threshold required at step two, any error the ALJ made in this determination was harmless." (citing *Salles v. Comm'r of Soc. Sec.,* 229 F. App'x 140, 145 (3d Cir.2007))). This is so because "[t]he step-two inquiry is a *de minimis* screening device to dispose of groundless claims." *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003). So even if the ALJ mistakenly misclassifies a severe impairment as non-severe at step two, that error is harmless so long as the ALJ considers the misclassified impairment's limitations in the RFC determination. *See Salles*, 229 F. App'x at 145 n.2 ("Because the ALJ found in [claimant's] favor at Step Two, even if he had erroneously concluded that some of her other impairments were non-severe, any error was harmless.").

1. **Endometriosis**

The ALJ did not err by classifying Courtney's endometriosis as non-severe because her treatment records closer to and during the alleged disability period reveal she had normal gynecological exams, her pelvic exams were normal, the gynecologist did not observe any tenderness, and Courtney reported that she was doing well. [AR495, 607, 613, 616-17, 799-800.] While the medical records that Courtney points to do reveal reports of tenderness during examinations, *see* AR393, 403, 419, 421, 428, 430-31, 464, 467, 474, 492, 494, those records are of limited relevance because they predate her alleged onset disability by months (in some cases, a full year). "[A]n ALJ may reject evidence that predates the relevant period and, therefore, may limit her analysis to the medical evidence in the record that follows Plaintiff's alleged onset date." *Gonzalez v. Colvin*, 2016 WL 1463990, at *4 (D.N.J. Apr. 13,

13

2016) (citation and internal quotation marks omitted); *see also Clayton v. Colvin*, 2014 WL 5439796, at *7 (W.D. Pa. Oct. 24, 2014) (finding Global Assessment of Functioning scores issued one year before the alleged onset of claimant's disability of "limited relevance"); *accord Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008) ("Medical opinions that predate the alleged onset of disability are of limited relevance.").

The ALJ compared Courtney's testimony on her endometriosis with her medical records during the alleged disability period, including her need to remain in bed all day because of the pain. [AR20.] The ALJ noted her gynecological exams were within normal limits. [*Id.*] Again, ALJs do not have to credit a claimant's subjective complaints of pain that are inconsistent with medical evidence. *Burns*, 312 F.3d at 129-30. Thus, the ALJ did not err by classifying Courtney's endometriosis as non-severe.

**2. Fibromyalgia**

To the extent the ALJ erred when classifying Courtney's fibromyalgia as a non-severe medically determinable impairment, the Court finds that error harmless. At the hearing, Courtney lumped her RSD and fibromyalgia symptoms together without differentiating between the two. [AR53-54.] When formulating Courtney's RFC, the ALJ considered all the symptomology and limitations that Courtney attributed to her RSD and fibromyalgia. [AR25.] Again, any error at step two regarding the classification of an impairment is harmless so long as the ALJ moves onto the other steps and considers the combined effects of all impairments when formulating the RFC. *Williams v. Comm'r of Soc. Sec. Admin.*, 2013 WL 4500335, at *17 (D.N.J. Aug. 21, 2013).

The ALJ did not find the medical evidence supported Courtney's symptomology and limitations to the "degree stated." [AR25-26.] And Courtney fails to explain how the

14

misclassification of fibromyalgia at step two could have changed the result. Thus, any error at step two on Courtney's fibromyalgia does not require a remand.

### 3. Headaches

Finally, substantial evidence supports the ALJ's finding that Courtney's headaches were not a medically determinable impairment, but a symptom of her medically determinable impairments. [AR23.] The ALJ found "little corroborating evidence" in the medical evidence to support a finding that Courtney's headaches qualified as a medically determinable impairment. [*Id.*]

To show that her headaches qualified as a medically determinable impairment, Courtney needed to prove that her headaches were established by "objective medical evidence from an acceptable medical source." 20 C.F.R. § 404.1521. Her statements alone would not suffice. *Id.* Besides her testimony on her headaches, there is no objective medical evidence in the record to support a finding that her headaches qualify as a medically determinable impairment. Indeed, her gynecologist listed "Migraine Headache" in the "Current Problems" of a medical record. [AR393.] And Courtney made only one complaint about headaches to her treating physicians during the alleged disability period. [AR760-61.] That physician referred her to a neurologist. [*Id.*] Yet there are no neurological treatment records in the record. Courtney's physicians' mere recitation of her subjective complaints into her treatment records are entitled to no weight. *Hatton v. Comm'r of Soc. Sec. Admin.*, 131 F. App'x 877, 879 (3d Cir. 2005) ("[A] medical source's recitation of subjective complaints is not entitled to any weight."). Simply put, there is no objective medical evidence or medical opinion diagnosing the cause of these headaches or opining that Courtney's ability to work would be impaired by her headaches. *See Ungemach v. Comm'r of Soc. Sec.*, 2019 WL 3024858, at *7 (D.N.J. July 11,

15

2019) (finding the ALJ did not improperly fail to consider Plaintiff's migraines in the RFC analysis because they were not a medically determinable impairment, explaining, "Other than Plaintiff's self-reporting that she experiences migraines, which her physicians have recorded in their records, Plaintiff does not cite to one medical record that reveals any office visit specific to her migraines, or documents how her migraine headaches impact her functioning.").

In any event, the ALJ found Courtney's headaches were a symptom of her severe medically determinable impairments. [AR23.] At the hearing, Courtney associated her headaches with her RSD and fibromyalgia. [AR74.] Again, when formulating Courtney's RFC, the ALJ found Courtney's medically determinable impairments could reasonably be expected to cause her symptomology but found the medical evidence did not support the symptomology to the "degree stated." [AR25-26.] Thus, given the medical evidence, the ALJ did not find Courtney entirely credible on the limitations caused by her medically determinable impairments. The Court detects no error.

### B. The RFC Determination

Courtney argues the ALJ'S RFC determination is flawed because the judge failed to adequately accommodate the limitations caused by her IC and RSD. [Pl.s' Br. at 12-19.] She also faults the ALJ for not adequately explaining his reasoning in crafting that RFC. [*Id.*] That inadequate explanation, Courtney argues, prevents meaningful judicial review. [*Id.* at 17-18.] The Court disagrees. The ALJ's RFC determination largely came down to a credibility call on Courtney's symptomology and limitations caused by her impairments. Again, the ALJ did not find Courtney entirely credible. [AR25-26.] This Court finds substantial evidence supports the ALJ's decision.

1. IC

While Courtney admits the ALJ included restroom accommodations in the RFC, she faults the ALJ for not explaining how that RFC can accommodate her frequent and urgent need to use the restroom. [Pl.s' Br. at 13.] Pointing to this Court's decision in *Williams v. Commissioner of Social Security*, 2019 WL 4574502 (D.N.J. Sept. 20, 2019), Courtney argues the ALJ's RFC is flawed because the judge did not consider how the off-task time needed to use the restroom will affect her ability to maintain fulltime employment. [*Id.* at 16-17.] Courtney goes onto explain the ALJ's silence on off-task time prevents this Court from engaging in meaningful judicial review. [*Id.* at 15-17.] These arguments are meritless.

To start, *Williams* is different. There, unlike here, the ALJ found the claimant's urinary frequency a non-severe medically determinable impairment and found the claimant not disabled. *Williams*, 2019 WL 4574502, at *2-3. In doing so, the ALJ failed to consider a doctor's report on the claimant's urinary frequency. *Id.* This Court rejected the Commissioner's "*post hoc* explanation of the ALJ's decision when the foundation for that explanation is nowhere to be found in the ALJ's written decision." *Id.* at *3. But, in dicta, this Court found the ALJ's classification of the claimant's urinary frequency as non-severe could not be harmless error because if the ALJ had credited the Vocational Expert's testimony, then the claimant could not have worked in the competitive labor market given the claimant's need to use the restroom. *Id.*

Unlike *Williams*, the ALJ did not overlook any objective medical evidence on Courtney's IC. The ALJ considered Courtney's subjective complaints and testimony on her restroom usage. [AR25.] The judge compared that testimony to the objective medical evidence in the record and found the medical evidence did not support Courtney's allegations

17

on symptoms and limitations "to the degree stated." [AR26.] Indeed, the ALJ looked to Courtney's gynecological treatment records that revealed normal exams and were "generally unremarkable." [*Id.*] Moreover, while Courtney's gynecologist referred Courtney to a urologist for her IC, *see* AR801, there is nothing in the record suggesting Courtney followed up with a urologist or sought any other treatment for her IC. And, besides her own testimony, Courtney points to no objective medical evidence to support her testimony that she needs to use the restroom up to eight times a day.

In any event, the ALJ considered Courtney's IC when formulating her RFC by adding the limitations that she have "ready access to a restroom" and her "need to use the restroom can be accommodated by the normal morning, lunch, and afternoon breaks." [AR25.] In fact, the ALJ refused to adopt the state-consultants' medical opinions that Courtney could perform light work because the evidence—including evidence on her IC—supported a more restrictive RFC. [AR27.] Again, the ALJ ultimately made a credibility call about Courtney's IC and restroom usage given the medical record. This Court finds substantial evidence supports the ALJ's RFC determination. *Ilana W. v. O'Malley*, 2024 WL 1928533, at *5 (D.N.J. Apr. 30, 2024) ("[T]he Court finds that the ALJ acted within his discretion in weighing Plaintiff's testimony regarding the 'intensity, persistence, and limiting effects' of her interstitial cystitis symptoms, including her urinary frequency, against other evidence in the record and ultimately declining to find Plaintiff disabled."); *accord Butler v. Astrue*, 773 F. Supp. 2d 975, 984 (D. Or. 2011) (finding RFC that included a limitation that claimant need "close access to the bathroom" to be "legally sufficient" to accommodate claimant's IC).

## 2. RSD

Courtney also faults the ALJ for failing to explain how the RFC can accommodate her RSD. [Pl.'s Br. at 17.] Courtney argues that, given her testimony and the objective medical evidence, the ALJ failed to consider the limiting effects of her RSD. [*Id.* at 18.] She goes onto explain that the ALJ's failure to "evaluate critical pieces of evidence that directly contradict his own findings" prevents meaningful judicial review. [*Id.* 18-19.] The Court disagrees.

Substantial evidence supports the RFC determination because the ALJ properly evaluated the limitations caused by Courtney's RSD. For example, medical records shortly after the April 2019 alleged onset disability date revealed no synovitis or tenderness in the hands or wrist. [AR547, 564.] And while certain medical records from 2020 and 2021 reveal reports of "[p]aresthesis [in] right and left arms and legs . . . [and] numbness[,]" AR679, Courtney's treatment providers rated her musculoskeletal motor strength "all 5/5 bilaterally[,]" *id.* [*See also* AR639, 786.] And Courtney reported that physical therapy helps. [AR60, 591.]

When formulating Courtney's RFC, the ALJ considered the numbness and paresthesia in her arms and hands by adding the frequent limitation on manipulative movements. [AR26-27.] The judge also considered her reduced lumbar range of motion, muscle spasm, and facet tenderness. [*Id.*] In doing so, the ALJ noted abnormal examination findings in the medical record and considered those findings when crafting the RFC. [AR26.] Moreover, the ALJ declined to adopt the state-consultants' medical opinions that Courtney could perform light work. [AR27.] The ALJ found the entire medical record supported a more restrictive RFC of sedentary work with other limitations. [*Id.*] Again, the ALJ

ultimately did not find Courtney entirely credible on her symptomology and limitations "to the degree stated[]" given the medical evidence. [AR26.] Courts must defer to ALJs' credibility determinations. *Zirnsak*, 777 F.3d at 612. And this Court finds substantial evidence supports the ALJ's credibility determination here.

All and all, the ALJ thoroughly discussed the medical evidence and Courtney's testimony about her pain and provided a well-reasoned decision. The judge also explained why he discounted the state-consultants' medical opinions. Accordingly, this Court finds substantial evidence supports the ALJ's decision.

### IV. CONCLUSION

For the above reason, the Court **AFFIRMS** the ALJ's decision finding Plaintiff Courtney W. not disabled under the Act. An accompanying Order of today's date shall issue.

**s/Renée Marie Bumb**
RENÉE MARIE BUMB
Chief United States District Judge

Dated: December 30, 2024